John R. Lane
Kevin Murphy
Garson, Segal, Steinmetz, Fladgate LLP
164 West 25th St.
New York, NY 10001
(P) 212-380-3623
(F) 347-537-4540
jrl@gs2law.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMBA MEDIA ASSOCIATES LIMITED,<br><br>                                    Plaintiff,<br><br>v.<br><br>CMCKNIGHT GROUP MEDIA LLC and CAIN MCKNIGHT,<br><br>                                    Defendants. | CIVIL ACTION NO.: 17-cv-___<br><br><br><br>**COMPLAINT AND**<br>**JURY TRIAL DEMAND** |

Plaintiff, Emba Media Associates Limited ("Emba" or "Plaintiff"), by and through its attorneys Garson, Segal, Steinmetz, Fladgate LLP, as and for its complaint states as follows:

**NATURE OF ACTION AND RELIEF SOUGHT**

1.  This is an action, based on diversity of citizenship, for equitable relief, specific performance, breach of contract, fraud and fraud in the inducement, and other appropriate relief under the laws of England and the State of New York.

2.  The specific facts and causes of action set forth herein, arise principally from the Defendants' brazen and willful breach of, failure to perform under, and fraudulent

1

    scheme to frustrate performance of the Asset Purchase Agreement dated and executed on March 11, 2016 ("APA") between Emba and CMcKnight Group Media LLC ("CMG"). A copy of the executed APA is annexed as **Ex. A** hereto.

3. During 2015, Emba acquired an extensive catalogue of physical film and video properties representing several animated film titles ("Emba Catalogue"), which Emba purchased in a German insolvency proceeding relating to the former owner of the Emba Catalogue, BKN International AG ("BKN") and the APA involved the purchase and acquisition of the Emba Catalogue by Defendant CMG.  APA at p.1, 1st – 3rd Whereas clauses.

4. Further and alternatively, this action arises from the fraudulent scheme conducted by CMG's sole principal Cain McKnight (McKnight), which involves repeated, intentional material false statements and omissions of material fact by McKnight designed to (a) induce Emba into entering into the APA, (b) facilitate CMG in carrying out its willful and bad faith non-performance under the APA and (c) prevent Emba from terminating the APA to seek alternative business opportunities for more than 8 months, by granting CMG exclusivity to the Emba Catalogue.

5. The APA simply provided for the sale by Emba and purchase by CMG of the Emba Catalogue for a total Purchase Price of $3,300,000.00, based on Defendants' representations and warranties that they were fully authorized and able to consummate and transact such purchase as set forth in the APA.

6. However, and in order to fraudulently induce Emba to enter into the APA, upon information and belief, Defendants withheld material information from Emba, to the effect that Defendants had no intention of complying with the specified payment

obligations of the APA unless and until one or more undisclosed third party transactions were completed by Defendants.

7. Further, Defendants made repeated false assertions both before and after execution of the APA that Defendants would and could timely pay all or any portion of the Purchase Price, when they had no intention of doing so unless and until such undisclosed third party business transactions were completed by Defendants, of which Emba had no knowledge.

8. As a result of Defendants willful non-performance and fraudulent scheme, Plaintiff requests immediate equitable relief by way of specific performance pursuant to §§ 6.13 and 6.15 of the APA and is accordingly entitled to payment by Defendants of the full $3,300,000.00 Purchase Price as well as reimbursement of its other expenses incurred such as storage fees and attorney fees caused by Defendants bad faith and fraudulent acts.

## **THE PARTIES**

9. Plaintiff, Emba Media Associates Limited is a U.K. company with its registered office at Ashcombe Court, Woolsack Way, Godalming, Surrey GU7 1LQ, United Kingdom ("Emba" or "Plaintiff").

10. Upon information and belief, Defendant CMcKnight Group Media LLC ("CMG"), is a privately held entity and corporation registered in Delaware with a registered agent located at 1013 Centre Road, Suite 4035, Wilmington, Delaware 19805.

11. Upon information and belief, Defendant Cain McKnight is a U.S. citizen and the sole principal executive and shareholder of CMG, who regularly conducts numerous business matters in this district through CMG and other entities, such as the Global

Millenium Development Foundation, which has an established place of business in this district located at 333 Rector Place, Suite 1005, New York, NY 10280.

## JURISDICTION AND VENUE

12. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that there is complete diversity of the parties as Defendants are citizens of a State and Plaintiff is a citizen or subject of a foreign state and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

13. The Court has personal jurisdiction over both Defendants because each Defendant CMG has acquired, by operation of law and/or as a matter of equity, the rights and obligations set forth in the APA, which was negotiated, executed and practiced in this District.

14. The Court has general and specific personal jurisdiction over Defendant CMG because, upon information and belief, it is a Delaware corporation residing within this district, which transacts business in this district and/or is otherwise subject to jurisdiction pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules.

15. The Court has general and specific personal jurisdiction over Defendant, McKnight because, upon information and belief, he continuously and systematically transacts business in this district, including through an established place of business located at 333 Rector Place, Suite 1005, New York, NY 10280 and/or is otherwise subject to jurisdiction pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules.

16. In particular, McKnight has and continues to regularly transact numerous business

matters in this District, including the negotiation and completion of the APA, which is the principal subject matter and focus of the disputes giving rise to this action.

17. Venue is proper in this judicial district under 28 U.S.C. §1391 because (a) each Defendant is subject to personal jurisdiction in this district, (b) a substantial part of the events, misrepresentations and/or omissions giving rise to the claims herein occurred in this district, and (c) the events, breaches and/or omissions of Defendants are circumscribed by the APA, which was negotiated, formed and executed in this district and in all events occurred and continue to occur in this district.

## BACKGROUND AND STATEMENT OF FACTS

18. The Emba Catalogue includes the copyrights, contract rights, rights to make use of and to exploit all components of a film work being part of a particular film title, in part self-created by BKN and in part acquired through various in-licensing agreements, and which include rights to the scripts, designs of characters and graphics, animations, dubbing services, cutting services, productions, post-production services, related merchandising activities, related trademarks and domain names.  APA at § 1.1.

19. Prior to the execution of the APA, Defendants had a months long opportunity to carry out a thorough due diligence exercise in relation to the Emba Catalogue by means of (a) an electronic data room contained in a hard drive, which was provided to Buyer prior to execution of the APA and (b) receipt of an extensive legal due diligence report as prepared by Hogan Lovells International LLP dated 24 February 2010, including the opportunity to ask questions relating thereto.  The opportunity to and conduct of this extensive due diligence effort was acknowledged by Defendants in the APA.  APA at p.1, 5th WHEREAS Clause.

20. Initially, Emba and CMG executed a "Summary of Terms and Exclusivity Agreement" on January 25, 2016, through which CMG was granted exclusivity over a purchase and/or license for the Emba Catalogue in exchange for payment of a deposit to Emba of $250,000.00 ("Exclusivity Agreement"; attached as **Ex B**).

21. CMG was required to transmit the deposit to Emba on January 25, 2016 but failed to do so then or subsequently. Id., p.1, "Deposit".

22. For example, from January 25 through mid-February 2016, Defendants made the following repeated and knowingly false written misrepresentations that the $250,000 deposit would be paid to Emba under the Exclusivity Agreement, through a series of emails and text messages from Defendant McKnight to Emba's principals:

- "Here is fully executed agreement. As soon as funds credit my attorneys account from HSBC HK he the will transfer into your [attorneys'] HSBC NY account." (1/26/2016 Email);
- "I just wanted to touch base with you and let you know my funds should be crediting today in NYC and will transfer over as promised. If you have any questions fell free to call." (1/27/2016 Email);
- "Funds should be crediting any time today in HSBC. Sometimes the feds take a few days to clear from HK. As soon as funds credit account my attorney Greg Frost will debit over. Thanks for your patience." (1/29/16 Email);
- "…you can verify with HSBC that the HSBC HK system has been down for last few days .. Which has held funds up. You will be able to verify this through your bank. Everything is back online and we will get funds out as soon as we can. Once out we will send you a confirmation email so you can then check accounts to confirm receipt." (2/2/16 Email);
- "I am sorry for delays .. It's in banks hands.. Hopefully will be out this afternoon .. Checking with bankers for clearance (2/4 /16 Text);
- "I hate to say this but 99.9999 in your account in am"  (2/4 /16 Text);
- "Wire is pending .. Waiting for the credit .. Maybe we can wrap this up today" (2/5/16 Text).

Copies of relevant Emails from McKnight to Emba are attached hereto as **Ex. C.**

23. Notwithstanding the above repeated and knowingly false misrepresentations the deposit under the Exclusivity Agreement was never transmitted by CMG to Emba, but

instead during mid-February 2016, Defendants requested that the Parties complete and execute the APA for the acquisition of the entire Emba Catalogue.

24. Thereafter, Defendants and Emba engaged in negotiations as to the terms of the APA and significantly the final terms of the APA, including in particular its final payment terms, were negotiated and agreed between the parties at an in-person meeting held in this district on March 2, 2016 between Defendant McKnight and one of Emba's principals.

25. The payment terms agreed under the APA provided for the acquisition of the entire Emba Catalogue by CMG through 3 incremental payments for a total purchase price of $3,300,000.00 ("Purchase Price").  APA at § 1.5.

26. In a text message dated March 11, 2016 to one of Emba's principals, Defendant McKnight specifically induced Emba to sign and become bound under the terms of the APA later that same day by representing in writing, knowing that the representation was false, that the Closing funds due under the APA would be transmitted to Emba on Monday, March 14 or Tuesday March 15, 2016:  "we r good to go…Will sign off today when I get to office…I would set up funds for Monday at the latest Tuesday…Congrats my friend… we got it done!"  3/11/2016 Text Message.

27. In reliance upon these and similar knowingly false statements communicated by Defendants' attorney to Plaintiff's attorney, Emba signed the APA and the Defendants signed and the Parties exchanged the executed APA on March 11, 2016.  APA at pp.1 and 19.

28. The total Purchase Price, pursuant to § 1.5 of the APA, was to be fully funded by CMG through 3 incremental payments specified in the APA, with the initial payment of

$1,250,000.00 to be made by CMG at an agreed Closing Date.  APA at § 1.5

29. Upon execution of the APA on March 11, 2016, the parties agreed that the first payment of $1,250,000 was to be transmitted to Emba's counsel's IOLA account on a Closing Date of no later than March 15, 2016, which was confirmed by McKnight: "Moving money at the end of day or in am buddy. Go ahead and let your attorneys know because I know they have tried to contact my attorneys for update …" (3/15/2016 Text).

30. Neither the first payment of $1,250,000 nor any amount of funds were paid by Defendants by the agreed Closing Date or on any date thereafter, notwithstanding repeated subsequent false and deceptive written communications by McKnight that all Purchase Price funds would be paid by Defendants.  *See* numerous Text Messages in ¶ 34 below, and **Ex. C** (Emails between McKnight and Emba; in particular, Emails dated 3/19, 2016, 3/25 & 29/2016 and 5/19, 21 & 30/ 2016).

31. The balance of the Purchase Price was to be paid by Defendant through a second payment of $1,000,000.00 to be received by Emba no later than June 1, 2016 and a final payment of $1,050,000.00 to be received by Emba no later than December 1, 2016. APA at § 1.5.

32. Defendants failed to make any one or all of the Purchase Price payments on the dates specified in § 1.5 of the APA or at any time up to and including the filing date of this action.

33. McKnight made numerous written representations and assurances through email and text communications to the principals at Emba after entering into the APA through late October 2016 that each and every Purchase Price payment, albeit untimely, would be

8

made by Defendants.  See **Ex.C** Emails between McKnight and Emba from March through October 2016.

34. For example, Defendant McKnight made the following false and deceptive statements to Emba in numerous text messages that Purchase Price payments under the APA would be made by Defendants:

    - "Moving money at the end of day or in am buddy. Go ahead and let your attorneys know because I know they have tried to contact my attorneys for update .." (15 Mar 2016);
    - "Funds are pending credit buddy.. I am been in meetings but on standby for credit to wire to you.  It's 5.30pm in NY so it's unlikely to be today." (17 Mar 2016);
    - "Greg [Defendants' attorney] spoke to your [Emba] attorney and is speaking to him now I think. He waiting on funds to credit .. I am sending him [C]ommerze [Bank] funds so be can attest and confirm."  (30 Mar 2016);
    - "I will give you a shout in a few hours .. Money should be out today to your attorneys…" (4 Apr 2016);
    - No drifting at all .. Funds have been wired out to us ... As soon as in will send ..." (4 Apr 2016);
    - "G[ood] M[orning] buddy!! No worries I will be sending $ out today" (5 April 2016);

35. Subsequent to the above false and deceptive assurances, from which no Purchase Price funds were paid, Defendants then resorted to arranging a fraudulent wire transfer through a Bank of America account ("False B of A Wire Transfer"), which was intentionally manipulated by McKnight to fail.  See April 5, 2016 email from McKnight to Emba.  See Email Communication from McKnight to Emba dated April 5, 2016 **(Ex. C)**.

36. The following chain of text messages from McKnight shows that the False B of A Wire Transfer was intentionally designed by McKnight to fail and to deceive Emba:
    - "…Sending you copy from bank.. My account was blocked for fraud alert and I

9

    did not notify the bank in time before they stopped wire for fraud .. Which obviously it was not .. I do not send million dollar wires from my BofA bank ever and it blocked my accounts "(6 Apr 2016);

- "I am sending it when back to computer .. I will send in small traunches so no red flags" (7 Apr 2016);
- "…Should have a email anytime confirming out.. BOfA sends emails saying ordered and then email saying wire sent…" (8 Apr 2016);
- "Waiting on email .. When I told u I was checking I checked emails and fraud again .. Luckily I called bank in time it's ok to send ….Now I feel bad .. I want to make sure u know I am being honest (8 Apr 2016).

37. No funds of any amount were paid toward the Purchase Price by Defendants from the False B of A Wire Transfer or otherwise and thereafter Defendants further deceived Emba by making false and deceptive assurances to arrange a meeting with Emba's principals in London, which never occurred, and to wire funds from a Merrill Lynch account.

38. On May 13, 2016 Emba, through its attorneys, sent Defendants' attorneys a formal Notice letter pursuant to § 6.11 of the APA summarizing Defendants' failures to comply with the APA and McKnight's numerous false and deceptive assurances regarding Defendants' defaults in failing to tender payment of the Purchase Price to date. *See* May 13, 2016 Letter from J. Lane to G. Frost **(Ex. D).**

39. Neither Defendants nor their attorneys responded to the May 13, 2016 letter, but instead McKnight continued to make false and deceptive assurances that Purchase Price funds would be forthcoming. *See* Email Communications from McKnight to Emba dated May 19, 21 and 30, 2016 **(Ex. C).**

40. No Purchase Price funds were paid by Defendants following these communications.

41. On June 6, 2016 Emba, through its attorneys, sent Defendants' attorneys a formal

10

Notice of Default letter pursuant to § 6.11 of the APA summarizing Defendants' multiple breaches and defaults under the APA, specifically highlighting:

> "(a)    Buyer's failure under §§1.5(a)(i) & (ii) and 1.8 [of the APA] to tender "cash payable to Seller via wire transfer to the account specified in Exhibit B" to the APA of US $ 2,250,000, which was due no later than June 1, 2016;
>
> (b)    Assumption of any and all Storage Fees as of June 1, 2016 under §1.7 of the APA for all Titles [of the Emba Catalogue] remaining in storage with Globecast under a storage agreement."

*See* June 6, 2016 letter from J. Lane to G. Frost annexed as **Ex. E** ("June Default Letter").

42.    In the June Default Letter Emba also provided Defendants with formal Notice of Emba's remedies arising from the defaults and breaches of the APA, including but not limited to:

   a. Indemnification of Emba under §5.2 (a) & (b) of the APA for all Losses incurred by Seller including,
      i. $2,250,000 of the Purchase Price,
      ii. $250,000 Deposit funds pursuant to the January 25, 2016 Term Sheet and
      iii. Attorney's fees incurred by Seller as of January 25, 2016;
   b. Specific Performance under §6.13 of the APA, the clear terms of which required Defendants to immediately tender $2,250,000 of the Purchase Price to Emba pursuant to §1.5(a)(i)&(ii) of the APA, and failing which Emba's entitlement to commence an action in equity to enforce its specific performance remedies under the APA; and
   c. Any other compensable losses, damages or remedies of Emba derived from Defendants' defaults.

43.    The June Default Letter also provided Defendants with formal Notice pursuant to §6.15 of the APA to request to meet in good faith with Defendants within ten (10) business days in an effort to resolve the above breaches and defaults.

11

44. Neither Defendants nor their attorneys responded in any way to the June Default Letter and made no good faith attempt to resolve their multiple breaches and defaults in compliance with the dispute resolution procedures provided in §6.15 of the APA or otherwise.

45. Following the June Default Letter Defendant McKnight continued to send false and deceptive written representations and assurances to Emba that payment of the Purchase Price, albeit untimely was forthcoming within the next day or week, but Emba never received a single payment from Defendants. *See*, e.g. 6/22/16 Email from McKnight **(Ex. C)**.

46. On September 27, 2016, more than 6 months after Defendants signed the APA, Defendants for the first time informed Emba that Defendants' previous breaches and defaults under the APA were caused by their failure to transact one or more unspecified and identified third party business transactions and that Defendants were unable to perform any of its obligations under the APA, particularly its obligation to pay Emba all or any part of the Purchase Price for the Emba Catalogue. *See* 9/27/2016 Email from McKnight to Emba **(Ex. C).**

47. Such information was material and Defendants' withholding of such material information from Emba was done for the purposes of fraudulently inducing Emba to enter into the APA in March 2016 and for deceptively concealing the fact that Defendants were not authorized to execute the APA and/or had no intention of complying with the APA unless and until it completed such undisclosed third party transaction(s).

## COUNT I
## BREACH OF THE APA BY DEFENDANT CMG

48. Plaintiff repeats and reasserts the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

49. The APA executed by the Parties is a valid and binding contract, which provides for the exchange of sufficient consideration between the Parties.

50. At all relevant times, Emba has been ready, willing and able to perform under the APA, at no time has Emba breached the APA and Emba relied on the APA and granted CMG exclusivity to the Emba Catalogue, thus fulfilling Emba's obligations.

51. Based on the facts detailed above, Defendant CMG was obligated under the APA to provide timely cash payments to EMBA for the total Purchase Price of $3,300,000.00 no later than the dates specified in § 1.5 of the APA but failed to do so and accordingly has breached the APA and remains in default thereof.

## COUNT II
## SPECIFIC PERFORMANCE OF THE APA AS TO DEFENDANT CMG

52. Plaintiff repeats and reasserts the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

53. In view of the multiple breaches and defaults under the APA by Defendant CMG detailed above, CMG has failed to perform any of its obligations under the APA.

54. Pursuant to § 6.13 of the APA, Emba is entitled to the remedy of specific performance due to Defendant CMG's failure to pay all or any part of the Purchase Price for the Emba Catalogue.

55. Accordingly Defendant CMG is required to specifically perform its obligations under the APA by paying the full $3,300,000.00 Purchase Price to Emba.

## COUNT III
## PIERCING THE CORPORATE VEIL AS TO DEFENDANTS CMG AND MCKNIGHT

56. Plaintiff repeats and reasserts the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

57. Upon information and belief, Defendants McKnight and CMG failed to adhere to the formalities of corporate existence in that they failed to keep adequate records relating to governance of their corporate affairs and accounting of its finances.

58. Upon information and belief, Defendant McKnight is the sole and/or controlling officer, shareholder, and/or managing member of CMG and has completely dominated CMG in that he solely organizes, manages and controls CMG.

59. Upon information and belief, Defendant McKnight conducts CMG's business in complete disregard of its corporate formalities in a manner that suits McKnight's own personal interests.

60. By virtue of the foregoing, CMG acts as an alter ego of McKnight.

61. In view of McKnight's disregard of the formalities of CMG, the adherence to the fiction of the separate corporate existence of CMG would result in injustice to Emba.

62. By reason of the foregoing, punitive damages are warranted in this action to punish Defendants McKnight and CMG for conduct that exhibits a high degree of moral culpability and manifests willful, wanton and/or reckless disregard for the rights of others.

63. By reason of the foregoing, Defendants McKnight and CMG are jointly, collectively and personally responsible for the aforesaid actions and defaults committed to the detriment of Emba and, in particular, McKnight is personally liable to Emba for

payment of the full Purchase Price of $3,300,000.00 as well as punitive damages, attorneys fees, costs, and interest in amounts to be determined at trial.

## COUNT IV
## FRAUD AND FRAUDULENT INDUCEMENT
## AS TO DEFENDANTS CMG AND MCKNIGHT

64. Plaintiff repeats and reasserts the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein

65. As set forth in detail above, McKnight deliberately withheld material information from Emba and made numerous knowingly fraudulent misrepresentations to Emba regarding McKnight's and CMG's authority to enter into and ability to perform under the APA.

66. Rather, McKnight and CMG fraudulently induced Emba to enter into the APA with no intention of performing its obligations, (a) particularly in falsely representing before and after execution of the APA, that they would pay all or any portion of the Purchase Price and (b) for the sole purpose of deceitfully acquiring exclusivity over all rights in the Emba Catalogue for more than 8 months, while pursuing the completion of one or more business transactions the existence and substance of which were withheld from Emba.

67. At the time CMG entered into the APA in March 2016, McKnight and CMG knew that it would not and/or could not perform under the APA by paying all or any part of the Purchase Price unless and until one or more undisclosed business transactions were completed at some unknown and unforeseen point in the future.

68. McKnight and CMG maintained their fraudulent scheme for more than 8 months after the execution of the APA, by making repeated false statements and misrepresentations

that payment of all or a part of the Purchase Price funds were imminently forthcoming from numerous bank accounts owned and/or controlled by Defendants all the while knowing that no such funds would be paid to Emba.

69. Emba relied on McKnight's and CMG's numerous false statements, misrepresentations and omissions as a basis for executing the APA, and refraining from terminating the APA, due to Defendants' months long nonperformance, all to Emba's severe detriment.

70. McKnight's and CMG's numerous knowingly false misrepresentations and omissions were all material to (a) Emba's decision to execute the APA , (b) to refrain from terminating the APA and/or (c) seeking alternative potential purchase and/or licensing opportunities for more than 8 months.

71. In view of the foregoing, Emba is entitled to payment of the entire Purchase Price under the APA, and to reimbursement of its attorney's fees, costs, disbursements and storage fees incurred as of the March 11, 2016 when it entered into the APA.

72. By reason of the foregoing, punitive damages are also warranted to punish McKnight and CMG for conduct that exhibits a high degree of moral culpability and manifests a willful, wanton or reckless disregard for the rights of Emba.

**COUNT V**
**BREACH OF EXPRESS WARRANTY AND INDEMNITY AS TO CMG**

73. Plaintiff repeats and reasserts the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

74. Pursuant to § 3.2 of the APA, Defendant CMG represented and warranted that it was "duly authorized by all requisite corporate action" to enter into the APA as well as for "the consummation...of all transactions contemplated" by the APA.  See § 3.2 of the APA

**(Ex. A at p. 12).**

75. In view of CMG's willful and bad faith failure to perform under the APA and the numerous knowingly false statements and misrepresentations of Defendants detailed above, CMG failed to obtain appropriate corporate authority to enter into and/or transact its obligations under the APA and therefore has breached the representations and warranties under the APA.

76. Pursuant to § 5.2 of the APA, CMG is required to indemnify Emba for such breaches, including but not limited to payment of the full Purchase Price for the Emba Catalogue as well as storage fees, attorney's fees and other expenses and losses incurred by Emba.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief and that the Court enter judgment against Defendants as follows:

1. That Defendants have breached the APA and as such that Plaintiff is entitled to all appropriate equitable remedies, namely specific performance under the APA and ordering Defendants to pay the full $3,300,000 Purchase Price under the APA to Plaintiff as well as all storage fees, attorney's fees and other expenses and losses incurred by Plaintiff in amounts to be determined at trial.

2. That Defendants McKnight and CMG are jointly, collectively and severally liable for the aforesaid actions and defaults committed to the detriment of Emba and therefore ordered to pay to Plaintiff the full Purchase Price of $3,300,000.00 under the APA as well as for punitive damages, attorneys fees, costs, and interest in amounts to be determined at trial.;

3.   That McKnight is personally liable to Emba for the aforesaid actions and defaults committed to the detriment of Emba and therefore be ordered to pay to Emba the full Purchase Price of $3,300,000.00 under the APA as well as for punitive damages, attorneys fees, costs, and interest in amounts to be determined at trial.;

4.   Awarding Plaintiff punitive damages in an amount to be determined at trial as warranted to punish McKnight and CMG for conduct that exhibits a high degree of moral culpability and manifests a willful, wanton or reckless disregard for the rights of Plaintiff.

5.   Alternatively, in the event the Court determines that the APA is null and void, Plaintiff shall be awarded all consequential damages based on Plaintiff's reasonable reliance on Defendants' knowingly false misrepresentations of material fact.

6.   That Plaintiff be awarded interest, including pre-judgment interest, on all awarded amounts;

7.   That Plaintiff be awarded its costs and reasonable attorney's fees and such further and other relief as the Court may deem equitable.

8.    That Plaintiff be granted such further and other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial on all issues so triable as raised by this Complaint.

Dated: New York, New York
       January 23, 2017

                                          GARSON, SEGAL, STEINMETZ, FLADGATE LLP

By:    *s/John R. Lane/*
        John R. Lane (JL 6942)
        Kevin Murphy (KM 2370)
        164 West 25th St.
        New York, NY 10001
        (P) 212-380-3623
        jrl@gs2law.com